FIN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PATRICK D. PAULING,** | : | CIVIL ACTION NO. 1:13-CV-01348 |
| Plaintiff, | : | (Chief Judge Conner) |
| v. | : | |
| **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,** | : | |
| Defendant | : | |

# MEMORANDUM

Presently before the court in the above-captioned matter is a motion (Doc. 11), filed by State Farm Mutual Automobile Insurance Company ("State Farm"), to dismiss Count II of the first amended complaint (Doc. 7), pursuant to Federal Rule of Civil Procedure 12(b)(6). The parties have fully briefed the issues and the motion is ripe for disposition. For the reasons that follow, the court will deny State Farm's motion.

## I. Factual and Procedural History

The instant matter involves an insurance coverage dispute related to an uninsured motorist ("UM") claim brought by Patrick D. Pauling ("Pauling") under his parents' State Farm automobile insurance policy.[1] At all times relevant to the amended complaint, State Farm was the automobile liability insurance carrier to

---

[1] State Farm is a corporation organized under the laws of the state of Illinois with a principal place of business in that state. Plaintiff is a resident of Wellsboro, Pennsylvania. Jurisdiction is thus proper based on 28 U.S.C. § 1332.

Pauling's parents, Daniel and Wana Pauling, pursuant to an insurance policy which provides UM coverage of $15,000 per person and $30,000 per accident. (Doc. 7, ¶ 3; Ex. 1 at 1). Pursuant to a stacking election, the total UM coverage available under the policy is $45,000 per person. (Doc. 7, ¶ 14). Pauling resided with his parents and their home was his permanent residence through May of 2012. (Id. at ¶ 4).

On January 24, 2010, Pauling was attending school in Daytona Beach, Florida when he was the victim of a hit-and-run accident while crossing state route A1A as a pedestrian. (Id. at ¶¶ 5-6). Among other injuries, Pauling's pelvis was fractured in three locations and required reconstructive surgery. (Id. at ¶ 7). He suffered knee damage and nerve damage to his right foot, and despite two subsequent operations on his knee and years of physical therapy, Pauling still uses a crutch to walk. (Id.). The damage to Pauling's right knee is believed to be permanent. (Id.). At the time of the accident, Pauling did not own a vehicle and had no insurance coverage available to him. (Id. at ¶ 8). Because the identity of the hit-and-run driver was unknown to him, Pauling sought to collect UM benefits pursuant to his parents' State Farm policy "under which he is insured as a resident relative." (Id. at ¶ 10).

Sometime after the accident, Pauling's father contacted Matthew Lawson, identified in the police report as a witness to the accident, and Lawson indicated to Pauling's father that the hit-and-run driver, and not Pauling, had been responsible for the accident. (Id. at ¶ 18). However, after Pauling made a claim with State Farm seeking UM benefits, State Farm "pressured and intimidated Lawson into providing a description of events" which placed blame for the accident on Pauling

and, in State Farm's view, supported a denial of coverage. (Id. at ¶ 28). State Farm made no attempt to locate and interview Lawson's girlfriend, a known eyewitness to the accident, and did not have an agent visit or inspect the scene of the accident. (Id. at ¶ 23, 25). Because Lawson, at State Farm's "substantial urging," reported that Pauling was at fault, (id. at ¶¶ 18-19), State Farm denied Pauling's claim for UM benefits. (Id. at ¶ 13).

Pauling commenced this action on April 9, 2013, with the filing of a two-count complaint in the Court of Common Pleas of York County, Pennsylvania. (Doc. 1, Ex. A). Pauling asserts claims for breach of contract (Count I) and for bad faith denial of an insurance claim pursuant to 42 PA. CONS. STAT. § 8371 (Count II). State Farm filed a timely Notice of Removal (Doc. 1) to this court and, on May 23, 2013, moved to dismiss Count II of the complaint, contending that Pauling had stated no facts to support a finding of bad faith liability. (Doc. 5). Pauling responded by filing an amended complaint (Doc. 7) on June 11, 2013, which included several additional paragraphs in support of his bad faith claim. State Farm again moved to dismiss (Doc. 11) on June 25, 2013, and the motion has been fully briefed. (Docs. 15, 18, 19).

## II. **Standard of Review**

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp.,

3

629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. When the complaint fails to present a prima facie case of liability, however, courts should generally grant leave to amend before dismissing a complaint. Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116–17 (3d Cir. 2000).[2]

---

[2] In its opening brief, State Farm appears to conflate the Rule 12(b)(6) standard with Pauling's ultimate burden at trial, asserting that his "accusations lack support," (Doc. 15 at 6), and arguing that Pauling must prove each element of his claim by "clear and convincing evidence." (Id. (quoting Polselli v. Nationwide Mutual Fire Ins. Co., 126 F.3d 524, 528 (3d Cir. 1997)). Provability of facts, however, is not part of the court's inquiry at this juncture. See Santiago, 629 F.3d at 130-31 ("The [court] takes as true all the factual allegations of the complaint."); see also Atiyeh v. Nat'l Fire Ins. Co., 742 F. Supp. 2d 591, 596 (E.D. Pa. Sept. 27, 2010) (court may not dismiss complaint "merely because it appears unlikely that the plaintiff can prove" the facts alleged). Accordingly, to the extent State Farm seeks to apply a heightened pleading standard, the court rejects this position.

4

**III. Discussion**

Pennsylvania's insurance bad faith statute, 42 PA. CONS. STAT. § 8371, provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%;
>
> (2) Award punitive damages against the insurer;
>
> (3) Assess court costs and attorney fees against the insurer.

Id. In order to prove insurer bad faith under § 8371, a plaintiff must show that the insurer: (1) did not have a reasonable basis for denying benefits; and (2) knew or recklessly disregarded its lack of a reasonable basis for denying the claim. Post v. St. Paul Travelers Ins. Co., 691 F.3d 500, 522 (3d Cir. 2012) (citing Condio v. Erie Ins. Exch., 899 A.2d 1136 (Pa. Super. Ct. 2006)).

Section 8371 does not explicitly define what constitutes bad faith conduct. However, courts have held that for purposes of § 8371 claims, "bad faith" is "any frivolous or unfounded refusal to pay proceeds of a policy," which "imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing) through some motive of self-interest or ill will." Keefe v. Prudential Prop. & Casualty Ins. Co., 203 F.3d 218, 225 (3d Cir. 2000) (citing Terletsky v. Prudential

5

Prop. and Casualty Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994)). Nevertheless, "a reasonable basis for denying coverage is all that is required to defeat a claim of bad faith." J.C. Penney Life Ins. Co. v. Pilosi, 393 F.3d 356, 367 (3d Cir. 2004).

State Farm contends that its denial of benefits was justified under the circumstances and the controlling law, emphasizing that negligence alone is insufficient for an insured to prevail on a bad faith claim. It is true, as State Farm posits, that "mere negligence or bad judgment is not bad faith." Williams v. Hartford Casualty Ins. Co., 83 F. Supp. 2d 567, 570-71 (E.D. Pa. Feb. 22, 2000) (quoting Terletsky, 649 A.2d at 688). State Farm is also correct that a reasonable but incorrect legal analysis resulting in a denial or a legitimate coverage dispute is not sanctionable insurer conduct. See Pilosi, 393 F.3d at 367. However, courts interpreting § 8371 have not limited its application to cases involving bad faith denials of coverage or coverage disputes, and "[a]n action for bad faith may also extend to the insurer's investigative practices." O'Donnell v. Allstate Ins. Co., 734 A.2d 901, 906 (Pa. Super. Ct. 1999) (noting that narrow construction of § 8371 would be contrary to statute's deterrent purpose); also Gallatin Fuels, Inc. v. Westchester Fire Insurance Co., 244 F. App'x 424 (3d Cir. 2007) (non-precedential) (insurer found liable for bad faith absent duty of coverage on the grounds that it "dragged its feet in the investigation of the claim, hid information from the insured, and continued to shift its basis for denying the claims.")). A bad faith claim may thus succeed even where reasonable minds could disagree as to the existence of coverage.

6

At this juncture, the court concludes that neither the law nor the facts support State Farm's position. Indeed, the course of conduct outlined in the amended complaint far surpasses mere negligence and falls squarely within the definition of bad faith conduct. Accepting the facts of the amended complaint as true, which the court must at this stage, <u>Santiago</u>, 629 F.3d at 130-31, the pleading establishes that Pauling was an insured under his parents' State Farm insurance policy at the time of the hit-and-run accident and thus covered by the policy's UM benefit provisions.[3] (Doc. 7, ¶ 13). The amended complaint further alleges that State Farm refused to visit the accident scene and declined to seek out a known eyewitness who, according to Pauling, could have corroborated his version of events. (<u>Id.</u>, ¶ ¶ 23, 25). Instead, State Farm actively and intentionally worked against its insured's interests, going so far as to "pressure[] and intimidate[]" an eyewitness into providing a false statement which placed blame for the accident with Pauling and, in State Farm's view, supported its decision to deny benefits. (<u>Id.</u> at ¶ 28).[4]

---

[3] Neither party has provided the court with a copy of the insurance policy. The court thus accepts as true Pauling's assertion that the policy extended coverage to him as a resident of the named insured's household.

[4] In its supporting brief, State Farm cites to a handful of cases as support for the proposition that broad accusations and sweeping conclusions are insufficient to satisfy the federal pleading standard. (<u>See</u> Doc. 15 at 9-12 (citing <u>Atiyeh v. Nat'l Fire Ins. Co.</u>, 742 F. Supp. 2d 591 (E.D. Pa. Sept. 27, 2010); <u>Sypeck v. State Farm Mutual Auto. Ins. Co.</u>, No. 3:12-cv-324, Doc. 11 (M.D. Pa. June 15, 2012) (dismissing claim supported only by "conclusory allegations" and "boilerplate language")). While the court concurs with these propositions as a matter of law, these cases are inapposite; Pauling has pled ample, specific facts in support of his bad faith claim.

Assuming the veracity of this account, State Farm's conduct embodies the "dishonest purpose" and self-interested conduct which the General Assembly sought to prevent when enacting § 8371. See Keefe, 203 F.3d at 225 (conduct which "imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing) through some motive of self-interest or ill will" falls squarely within § 8371). Not only did State Farm fail to visit the scene of the accident and investigate a known exculpatory eyewitness, it intentionally encouraged a witness to provide a false statement to support its decision to deny coverage. In the court's view, such conduct, independent of the rest of Pauling's allegations, is sufficient to sustain a bad faith claim. Coupling that conduct with State Farm's selective and self-interested investigation, the court is compelled to conclude that State Farm's actions, if proved, represent exactly the type of egregious bad faith conduct contemplated by § 8371. State Farm's motion to dismiss Count II will thus be denied.

## IV. Conclusion

For the foregoing reasons, the court will deny State Farm's motion (Doc. 11) to dismiss. An appropriate order follows.

/S/ CHRISTOPHER C. CONNER
CHRISTOPHER C. CONNER
Chief Judge, Middle District of Pennsylvania

Dated: September 26, 2013

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PATRICK D. PAULING,** | : CIVIL ACTION NO. 1:13-CV-01348 |
| **Plaintiff,** | : (Chief Judge Conner) |
| v. | : |
| **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,** | : |
| **Defendant** | : |

## **ORDER**

AND NOW, this 26th day of September, 2013, upon consideration of the motion to dismiss (Doc. 11) by State Farm Mutual Automobile Insurance Company ("State Farm"), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that State Farm's motion (Doc. 11) is DENIED.

      /S/ CHRISTOPHER C. CONNER
      CHRISTOPHER C. CONNER
      Chief Judge, Middle District of Pennsylvania